UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:25-cv-60230

Q6 INTELLIGENCE, LLC,

    *Plaintiff*,

v.

BINANCE HOLDINGS LIMITED,

    *Defendant*.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant Binance Holdings Limited ("BHL") hereby removes this case from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida, being the District embracing the place where the case is pending. In support, BHL states:

### THE PARTIES

1. Plaintiff Q6 Intelligence, LLC ("Q6 Intelligence") is a Delaware limited liability company. Its principal place of business is located in Broward County, Florida and its sole member is Eli Dominitz, a natural person who is citizen of the state of Florida.

2. BHL is limited company organized under the laws of the Cayman Islands and maintains its principal place of business outside of the United States.

### THE LAWSUIT

3. Q6 Intelligence commenced this action against BHL by filing a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida on November 22, 2024. *See* Plaintiff's Complaint, with exhibits A-F, attached as **Exhibit 1** ("Complaint").

4. Q6 Intelligence sent a copy of the Summons[1] and Complaint to three BHL employees via email on December 14, 2024.

5. While the emails to the employees do not constitute proper service of process, pursuant to Fla. R. Civ. P. 1.070, BHL executed and the parties jointly a waiver of service in state court on January 9, 2025. *See* BHL's "Waiver of Service of Process," attached as **Exhibit 2**.

### THE LAWSUIT RELATES TO AN ARBITRATION AGREEMENT

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, which confers original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."

7. Removal is supported by federal question under 28 U.S.C. §§ 1441 and 1446. This Court has original jurisdiction over this matter under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), which provides: "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (…) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

8. The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. As the Supreme Court has explained, "[t]he goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

---

[1] The Summons was issued by the Clerk of Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida even though the case was filed in the Seventeenth Judicial Circuit In and For Broward County, Florida. Even if the email service of process was valid (it was not) the incorrect summons would be defective process under Florida law.

9. In 1970, Congress enacted Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–08 ("Convention Act"), in order "to establish procedures for our courts to implement the Convention." *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

10. The Convention further states that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention," 9 U.S.C.A. § 202. Section 2 of the Convention, 9 U.S.C.A. § 2, states: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

11. Here, BHL is a citizen of the Cayman Islands, and the Plaintiff entered into a written contract with BHL which has a valid arbitration clause that falls under the Convention.

12. Specifically, Q6 Intelligence's sole cause of action is for breach of contract, wherein Q6 Intelligence alleges that BHL "breached [a] Service Agreement" between the parties and, therefore, seeks damages incurred "[a]s a direct and proximate result" of the alleged breach. Complaint ¶¶ 31-38.

13. Q6 Intelligence's Complaint alleges that both parties executed a "Statement of Work" or "Service Agreement" whereby Q6 Intelligence "agreed to provide various e-crime intelligence services to [BHL] in exchange for [BHL's] agreement to pay for the services." Complaint ¶ 9.

14. The Complaint included a copy of the purported Service Agreement. Complaint ¶ 9. *See* Exhibit A to Complaint

15. The Agreement "is subject to and incorporates by reference BHL's Standard Supplier Terms which can be found at www.binance.com/en/Legal/Supplier-Terms." Exhibit A, at 7. Paragraphs 28.1 and 28.2 of the Standard Supplier Terms provide that any dispute "aris[ing] out of or in connection with this Agreement or the performance, validity or enforceability of it" will be first mediated at the Singapore Mediation Centre and then, if necessary, "finally resolved by arbitration, administered by the Singapore International Arbitration Centre." Binance, *Binance Standard Supplier Terms*, https://www.binance.com/en/legal/supplier-terms (last visited Feb. 8, 2025), attached as **Exhibit 3**.

16. Q6 Intelligence's claim falls within the dispute-resolution provisions of the Binance Standard Supplier Terms because the claim is "a dispute" which "arises out of or in connection with" the Service Agreement "or the performance … of it." Exhibit 3 (Binance Standard Supplier Terms), at art. 28.1.

17. The Service Agreement therefore mandates that "the parties shall follow the procedure set out in this clause" for dispute resolution. *Id.*

## THE ARBITRATION AGREEMENT AT ISSUE FALLS UNDER THE NEW YORK CONVENTION

18. This lawsuit "relates to an arbitration agreement," 9 U.S.C. § 205, because the case's outcome will be decided by binding arbitration. *See Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1325 (11th Cir. 2018), *rev'd on other grounds by GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020) ("And this lawsuit sufficiently 'relates to' the arbitration agreement in the…Contracts. As alleged in the pleadings, the present lawsuit…concerns the performance of the…Contracts, and the arbitration agreement contained in those Contracts is sufficiently related to the instant dispute such that it could conceivably affect the outcome of this case."). The only cause of action involves a dispute over a single commercial contract that has binding foreign arbitration provisions. Complaint ¶¶ 31-38; Exhibit 3 (Binance Standard Supplier Terms), at art. 28.

19. To determine whether an arbitration agreement "fall[s] under the Convention," 9 U.S.C. § 205, "the Court considers whether Defendants have articulated a non-frivolous basis (1) that there is an agreement in writing, that is, an arbitral clause in a contract or an arbitration agreement, signed by the parties … ; (2) that the agreement provides for arbitration in the territory of a signatory of the New York Convention; (3) that the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) that a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relationship with one or more foreign states." *Ellis v. Oceania Cruises, Inc.*, No. 19-CV-22732, 2020 WL 13358551, at *3 (quoting *Outokumpu Stainless*, 902 F.3d at 1324); *see also* 9 U.S.C. § 202 (definition of "[a]greement or award falling under the [New York] Convention").

20. Accepting Plaintiff's allegations as true for these purposes, all four requirements are satisfied here.

    a. The Service Agreement between the parties includes mandatory mediation and arbitration provisions. *See* Exhibit C to Complaint, at 7 (incorporating "Binance's Standard Supplier Terms"); Exhibit 3 (Binance Standard Supplier Terms), at art. 28 (requiring disputes to be mediated at the Singapore Mediation Centre and, if necessary, arbitrated at the Singapore International Arbitration Centre). This agreement was signed by both parties, Exhibit C to Complaint, at 8, and explicitly mentions portions of the incorporated terms, evidencing both parties' knowledge and consideration of them. *See* Exhibit C to Complaint, at 7 (modifying the liability provisions in art. 14 of the incorporated terms).

    b. The Service Agreement provides for arbitration in the territory of a New York Convention signatory, Singapore. *See* Exhibit 3 (Binance Standard Supplier Terms), at art. 28.2; New York Convention, Contracting States, https://www.newyorkconvention.org/contracting-states (last visited Jan. 2, 2025) (stating that Singapore ratified the New York Convention in August 1986).

c. The agreement arises from a commercial legal relationship, namely, BHL's purported agreement to pay Q6 Intelligence in exchange for "continuous monitoring and analysis of public and restricted data to proactively identify and contain emerging threats." Exhibit C to Complaint, at 4.

d. At least one party to the agreement is not an American citizen. BHL is a Cayman Islands entity without a principal place of business in the United States. Complaint ¶ 3.

21. Based on the above, the Service Agreement's arbitration provision "fall[s] under the [New York] Convention." 9 U.S.C. § 205. Therefore, because the subject matter of this litigation relates to that arbitration provision, this action is removable at any time before trial under 9 U.S.C. § 205. Because no trial has occurred in this matter, this removal is timely.

### THIS CASE FALLS ALSO WITHIN THE COURT'S DIVERSITY JURISDICTION AS THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN THE PARTIES AND THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

22. Q6 Intelligence is an LLC and its sole member is Eli Dominitz, a natural person who is citizen of Florida, which means Q6 Intelligence is a citizen of Florida.

23. Binance is a limited liability entity organized under the laws of the Cayman Islands, with no principal place of business in the United States. For diversity purposes, Binance is therefore a citizen of the Cayman Islands because "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). *See also Medvedev v. Binance Holdings Ltd.*, 2024 WL 4664704, at *1 (E.D.N.Y. Aug. 8, 2024) (for diversity purposes BHL is a citizen of the Cayman Islands).

24. Complete diversity of citizenship exists in this case because it is a civil action between "citizens of a State and citizens of subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

25. The Complaint on its face requests $155,250.00 in damages "plus interest, attorneys' fees and costs." Complaint ¶ 38. This amount exceeds the $75,000 minimum amount in controversy. 28 U.S.C. § 1332(a).

**BHL HAS SATISFIED ALL PROCEDURAL REQUIREMENTS FOR REMOVAL**

26. A copy of the docket and other papers, including process and pleadings, that are not otherwise attached herein which have been filed in the Seventeenth Circuit Court are attached as **Exhibit 4.**

27. This removal is timely because it is being filed within thirty days of the execution of the waiver of service. *See, e.g., First Coast Logistics of New Jersey, LLC v. Cross Port Transp., Inc.*, 2024 WL 1940937, at *2 (M.D. Fla. Jan. 31, 2024) ("removal was … timely because the triggering date is when the waiver was executed."); *McEachern v. McEachern*, 2023 WL 8432113, at *2 (M.D. Fla. Dec. 5, 2023) ("the thirty-day removal period is triggered by formal service of process *or* waiver of service of process.").

28. Contemporaneously with the filing of this Notice of Removal, BHL has served written notice upon Q6 Intelligence through its counsel of record and filed a copy of this Notice of Removal with the Seventeenth Circuit Court.

Dated: February 8, 2025

/s/ Aaron S. Weiss
Aaron S. Weiss (FBN 48813)
Email: aweiss@carltonfields.com
Carlton Fields, P.A.
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: 305-539-7382

*Attorneys for Defendant BHL*

138363836.1